BRAGDON v. PERKINS-CAMPBELL CO.

(Circuit Court of Appeals, Third Circuit. April 13, 1898.)

No. 14.

NEGLIGENCE—SALE OF DEFECTIVE ARTICLES—LIABILITY TO THIRD PERSON.
In the absence of fraud or deceit in effecting the sale, the maker and seller of an article not inherently dangerous in character is not liable to one, not a party to the contract of sale, who is injured because of defects in the material or construction of the article, arising from negligence of the maker.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

C. C. Dickey and W. K. Shiras, for plaintiff in error.
A. P. Burgwin and Thornton M. Hinkle, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

DALLAS, Circuit Judge. The defendant sold and delivered to Albert R. Bragdon, the husband of the plaintiff, a sidesaddle; and in the statement of claim it is alleged:

"The said defendant then and there promised and agreed with the said Albert R. Bragdon, acting in behalf of the said plaintiff, that the said sidesaddle should be made by defendant especially for the use of the said plaintiff, and, that, by reason of said intended use by the said plaintiff, he would take care to make and deliver a saddle of especial strength and safety, and constructed of the best material, and by means of the best workmanship."

Here there is alleged, simply and solely, an agreement to "take care"; but as the action is not ex contractu, but ex delicto, this allegation can be regarded only as matter of inducement. The substantial averment, the gravamen of the declaration, is:

"It became and was the duty of the defendant to make and deliver to the said Albert R. Bragdon, for the use of the said plaintiff as aforesaid, a safe, sound, strong, and skillfully made saddle,—made of the best material, and with the best workmanship. But the said defendant, disregarding its duty in the premises, negligently and unskillfully made and delivered to the said plaintiff, by the said husband, an unsafe, unsound, and weak saddle," by reason whereof the plaintiff sustained injury, and was damaged.

· It thus appears, not only that the action sounds in tort, but also that the specific wrong declared upon is not deceit, but negligence; and, we may add, the record discloses nothing upon which the plaintiff could have recovered, if she had attempted to do so, either for breach of warranty or for deceit. We have, then, a case in which the essential element consists of a breach of duty; and the burden is on the plaintiff to prove facts sufficient to show what the duty is, and that the defendant owed it to her. 1 Shear. & R. Neg. § 8; Beach, Contrib. Neg. 6; Thomp. Neg. (preface). Dr. Wharton (Whart. Neg. § 24) defines a legal duty thus:

"That which the law requires to be done or forborne to a determinate person, or to the public at large, and is a correlative to the right vested in said determinate person, or in the public."

This definition may be properly applied to this case, and, so applying it, it appears that the supposed right of the plaintiff must be rested upon the affirmance of the proposition that to her, as a determinate person, the defendant owed a duty to carefully construct the saddle in question. But this proposition cannot be sustained  In the leading case of Langridge v. Levy, 2 Mees. & W. 519, the father of the plaintiff had bought from the defendant a gun, which was represented by the defendant, who knew it was intended for use by the plaintiff, to have been made by a certain manufacturer, and to be a safe gun. It had not been made by the manufacturer named, and, while the plaintiff was using it, it burst, and wounded him. The court said:

"It is clear that this action cannot be supported upon the warranty as a contract, for there is no privity in that respect between the plaintiff and the defendant"; and "we are not prepared to rest the case upon one of the grounds on which the learned counsel for the plaintiff sought to support his right of action, namely, that wherever a duty is imposed on a person, by contract or otherwise, and that duty is violated, any one who is injured by the violation of it may have a remedy against the wrongdoer."

The plaintiff's right of recovery was accordingly not sustained for breach of warranty or for negligence, but solely upon the ground that there had been fraudulent misrepresentation, and that the injurious consequence to the plaintiff was "the result of that fraud." This judgment was affirmed. 4 Mees. & W. 337. And the appellate court distinctly based its decision upon the same foundation as that which had been relied on by the court below. Thus, it plainly appears that both courts dealt with Langridge v. Levy as a case of deceit, and carefully avoided affording any excuse for implication that they would have sustained it as for negligence. The reason for thus distinguishing between these wrongs is not stated in either of the opinions, but it is, we think, quite obvious. Ordinarily, where a vendee accepts the purchased article, the vendor becomes, by reason of such acceptance, relieved from liability to third parties with respect to it. The vendee assumes, and the vendor stands discharged of, responsibility to them. But, where the vendor is chargeable with deceit,—where he has induced the vendee's acceptance by false and fraudulent misrepresentations,—the latter cannot be said to have consciously taken upon himself any duty of care; and that duty, therefore, if existent, is not shifted from the vendor, and he

consequently remains liable. In Heaven v. Pender (1883) 11 Q. B. Div. 503, Brett, M. R., sought to lay down the rule:

"That whenever one supplies goods or machinery, or the like, for the purpose of either being used by another person under such circumstances that every one of ordinary sense would, if he thought, recognize at once that unless he used ordinary care and skill with regard to the condition of the thing supplied, or the mode of supplying it, there will be danger of injury to the person or property of him for whose use the thing is supplied, and who is to use it, a duty arises to use ordinary care and skill as to the condition or manner of supplying such thing. And if there be a neglect of such ordinary care or skill, whereby injury happens, a legal liability arises, to be enforced by an action for negligence."

It must be conceded that this proposition, if sound, would lend support to the contention of the plaintiff in error. But it is not sound. It affirms a view of the law which, in Langridge v. Levy, the court declined to adopt, and which was repudiated by a majority of the judges (Cotton, L. J., and Bowen, L. J.) in the case in which it was propounded. One of the judges last mentioned delivered, on behalf of both of them, an opinion, in which it is said:

"I am unwilling to concur with the master of the rolls in laying down unnecessarily the larger principle which he entertains, inasmuch as there are many cases in which the principle was impliedly negatived. Take, for instance, the case of Langridge v. Levy, to which the principle, if it existed, would have applied, but the judges who decided that case based their judgment on the fraudulent representation made to the father of the plaintiff by the defendant. In every case where the decision has been referred to, the judges have treated fraud as the ground of the decision, as was done by Coleridge, J., in Blakemore v. Railway Co., 8 El. & Bl. 1035; and in Collis v. Selden, L. R. 3 C. P. 495, Willes, J., says that the judgment in Langridge v. Levy was based on the fraud of the defendant; and this impliedly negatives the existence of the larger principle which is relied on; and the decision in Collis v. Selden and in Longmeid v. Holiday, 6 Exch. 761, in each of which the plaintiff failed, was, in my opinion, at variance with the principle contended for. The case of George v. Skivington, L. R. 5 Exch. 1, and especially what is said by Kleasby, B., in giving judgment in that case, seems to support the existence of the general principle. But it is not in terms laid down that any such principle exists, and the case was decided by Kleasby, B., on the ground that the negligence of the defendant, which was his own personal negligence, was equivalent, for the purposes of that action, to fraud, on which, as he said, the decision in Langridge v. Levy was based."

It is not necessary, for the present purpose, to further comment upon the English authorities. The reference made to some of them in the immediately preceding extract shows, we think, that in Heaven v. Pender the majority of the court were clearly right in declining to concur with the master of the rolls in laying down the larger principle which he entertained, and which, so far as it purported to be a deduction from the general rule as to negligence, has been disapproved by Sir Frederick Pollock in his standard treatise upon the Law of Torts. Pol. Torts (2d Ed.) p. 375, note E. Upon careful examination of the decisions of the courts of England, and in view of the conclusion derived from them by so eminent an English lawyer as the author to whom we have just referred, it seems perfectly safe to assume that this action would not have been sustained there; and it appears to be equally clear that there is no material difference in this regard between the law of that country and our own. The judgment of the supreme court of Pennsylvania in the case of Curtin v. Somerset, 140 Pa. St. 70, 21 Atl. 244, which

was decided in 1891, is entirely satisfactory to us, and is, in principle, directly applicable. In that case the defendant had contracted to erect a certain hotel, according to plans and specifications. The building was completed and accepted. Thereafter, a girder, which in part supported its porch, gave way and the porch fell, injuring the plaintiff, who was a guest of the hotel. He sued the contractor, but it was held that he had no cause of action against him. His contention was that the accident was caused by the defective construction of the porch; that it was not according to plans and specifications; that the defects were not observable after the building was completed, and, in point of fact, were unknown to the hotel company when it accepted the building from the contractor. The court assumed the verity of these allegations (very like to those of the plaintiff in this cause), but held that the contractor was not liable to the plaintiff upon contract, because there was no contractual relation between them; nor in tort, because such liabilities must be confined "to the parties immediately concerned." The authorities in the several states are not all perfectly clear upon the subject, but it is unnecessary to refer to them further than has been done by the learned judge in the court below. As was said by the learned judge who delivered the opinion in the case last cited by us: "We regard the weight of authority as with the views above indicated. Moreover, they are sustained by the better reason." The supreme court of the United States had before it, in the case of Bank v. Ward, 100 U. S. 195, a case involving very similar considerations. A lawyer, who, for his client, had erroneously certified the recorded title of certain real property, was sued by another person, who had suffered loss in consequence of his reliance upon the correctness of the certificate. The judgment of the court, so far as pertinent here, is well condensed in the headnote, where it is said:

"That there being neither fraud, collusion, or falsehood by A., nor privity of contract between him and C., he is not liable to the latter for any loss sustained by reason of the certificate."

The court, in its opinion, applied this language:

"He only who, by himself, or another as his agent, employs the attorney to do the particular act in which the alleged neglect has taken place, can sue for that neglect. * * *"

Three members of the court dissented from the judgment, but apparently upon the ground that the attorney who gave the certificate was chargeable with knowledge that it was to be used, in some transaction of his client with another person, as evidence of the facts certified to, and that, therefore, the attorney should be held liable to such other person, not for negligently performing his contract with his client, but for, in effect, certifying to the person with whom his client was dealing (the plaintiff in the case) a fact as true, which, if he had exercised ordinary care, he would have known to be untrue. In other words, that the attorney was chargeable with culpable ignorance, where it was his duty to be informed, and therefore had committed a legal deceit, not only against his own client, but against the plaintiff as well. The case of Railroad Co. v. Elliott, 149 U. S. 266, 13 Sup. Ct. 837, though not directly in point, is worthy of examina-

tion in this connection. What is said in the opinion of the court at pages 271 and 272, 149 U. S., and page 837, 13 Sup. Ct., indicates, we think, that it was assumed that, except under special circumstances, the acceptance by the vendee of the subject of purchase and sale relieves the vendor from liability to a stranger for any injury resulting to him from negligent construction of the thing sold. See, also, Goodlander Mill Co. v. Standard Oil Co., 11 C. C. A. 253, 63 Fed. 400. There are cases which may seem to qualify the principle which we have discussed, but which are quite consistent with it, and which, as is pointed out in Curtin v. Somerset, supra, have no application to such an one as that with which we are now concerned. They decide that one who deals with a thing which is inherently very dangerous, involving "death or great bodily harm to some person, as the natural and almost inevitable consequence" of lack of care, owes to the public at large the duty of extreme caution. Such a case is Thomas v. Winchester, 6 N. Y. 397, which in England has been thought to go too far. Brett, M. R., in Heaven v. Pender, supra. But it is hard to see in what respect it goes further than Dixon v. Bell, 5 Maule & S. 198, which was cited as a strong case, and apparently with hesitating acceptance, in Longmeid v. Holiday, 6 Exch. 761, where it was rightly held that, as lamps are not in their nature explosive, liability for sale, without fraud, of an ill-made lamp, which exploded in use, is contractual only, and therefore does not extend to any person who could not sue on the contract; or on a warranty therein expressed or implied. See Pol. Torts, p. 440. In our opinion, Thomas v. Winchester was rightly decided; but that case, and the others which follow its lead, do not at all conflict with our present judgment. The article here in question is not, like a poisonous drug, which was the harmful agent in Thomas v. Winchester, inherently dangerous, but is, like the lamp in Longmeid v. Holiday, not in its nature hazardous. The circuit court did not err in refusing to strike off the compulsory nonsuit which it had entered, and therefore the judgment is affirmed.