377 P.2d 958

**Miguel TRUJILLO, Plaintiff-Appellant,**

**v.**

**Ernest CLARK, d/b/a Clark & Son Auto Wrecking and Salvage, Defend- ant-Appellee.**

No. 6942.

Supreme Court of New Mexico.

Jan. 17, 1963.

M. W. Hamilton, Santa Fe, for appellant.

Catron & Catron, Santa Fe, for appellee.

BRAND, District Judge.

The appellant Trujillo, plaintiff below, on the morning of October 13, 1958, went to defendant's automobile wrecking yard at Santa Fe looking for used parts for his car. He was 60 years of age, had had no schooling, and stated his occupation as a skilled laborer and carpenter's helper. In that portion of the yard where old and wrecked cars were stored, he found a front seat cushion which he wanted, and returned that afternoon to obtain it after ascertaining its price from the defendant. It had to be detached from a Ford car near which was leaning a Chevrolet, and while he was going between these cars, the Chevrolet in some unexplained manner fell over and against him causing the injuries complained of. He had gone between these two

cars that morning without incident and testified that he apprehended no danger in doing so. He could have gotten the cushion without going between the cars, but stated he retraced his path because he was sure it was safe to do so—"Because there was no danger," in his words. In this area, cars which had been stripped of usable parts were piled or stacked so as to facilitate burning, after which they were cut into pieces for scrap metal.

Suit was filed in August, 1959, alleging that plaintiff was a business invitee and sustained injuries because of the grossly negligent manner in which defendant maintained the wrecking yard, in that these automobiles had been placed in positions by defendant and his employees, which constituted a danger to anyone attempting to pass between them. The defendant answered, denying the allegations of negligence and pleading the defenses of contributory negligence and assumption of risk. The matter was tried to the court without a jury, which found for the defendant after both parties had rested, and this appeal followed. Both parties had requested findings of fact and conclusions of law and the court had, prior to final judgment, entered its findings and conclusions, those deemed material here reading as follows:

"10. Said automobiles, by reason of the positions in which they had been placed and in which they were at the

time of the accident herein involved, constituted a danger to anyone attempting to pass between them, which danger was a danger which was obvious and was as open to view and observation by plaintiff as by defendant.

"11. The positions of said automobiles being in plain view and visible and as open to observation by plaintiff as by defendant, and the dangers or hazards inherent in their positions to anyone attempting to pass between them being as visible and open to observation by plaintiff as by defendant, defendant owed no duty to plaintiff to give him warning of the positions of said cars or of the danger or hazard inherent therein to anyone attempting to pass between them on the occasion of the accident, under the circumstances, regardless of whether the relationship of plaintiff to defendant was that of an invitee or was some other relationship.

"12. Plaintiff, in attempting to pass between the said two automobiles, under the circumstances that existed, assumed the risk of doing so.

"13. Plaintiff, in attempting to pass between the said two automobiles, under the circumstances that existed and disclosed by the evidence, was guilty of negligence which was the proximate cause of the accident and his injuries.

"14. Even were it assumed that defendant, in permitting the said two automobiles to be placed in the positions in which they were placed, and in permitting them thereafter to remain in said positions up to the time of the accident herein involved, was guilty of negligence, plaintiff, in attempting to pass between said two automobiles, under the circumstances disclosed, was guilty of negligence which contributed to the accident and injuries sustained by him, as a proximate cause thereof."

Appellant sets out three points on which he relies for reversal, reading:

"Point 1. A business proprietor is under a duty to business invitees to know of dangerous conditions on his premises and to warn business invitees of dangers thereon which such proprietor knows about or should know about in the exercise of reasonable care.

"Point 2. The proprietor of a business establishment open to the general public is under a duty to maintain his premises in a reasonably safe and suitable condition and a business invitee has the right to expect the premises of such establishment will be so maintained and that the proprietor thereof will take reasonable precaution to secure the safety of the business invitee.

"Point 3. The Trial Court's findings of fact that the plaintiff was guilty of

assumption of risk and contributory negligence are not supported by substantial evidence."

It is obvious that if appellant is mistaken in his appraisal of Point 3, it is unnecessary to consider the other points raised. If the court's findings that plaintiff was guilty of assumption of risk and contributory negligence *are* supported by substantial evidence, plaintiff cannot prevail in any event.

■ The facts found by the trial court are the facts upon which the case rests upon appeal and are binding on us unless set aside as not supported by substantial evidence. Cochran v. Gordon, 69 N.M. 346, 367 P.2d 526; Dowaliby v. Fleming, 69 N. M. 60, 364 P.2d 126.

■ When appellant asserts that the evidence does not substantially support findings of fact made by the trial court, this court must view the evidence together with all reasonable inferences to be deduced therefrom in the light most favorable to the successful party, and all evidence to the contrary must be disregarded. Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777.

Plaintiff testified that he went between the cars; that he saw the cushions; that he returned to remove them later; that the condition did not look like a dangerous one; that he had no feeling that the Chevrolet might fall or turn over; that he did not think there was anything dangerous about the position of that car and thought that it was entirely safe to move around it; that he looked at it carefully to be sure that it was safe. When asked what made the car fall, he replied that he did not know what it could have been.

Plaintiff also testified that he saw the position of the Chevrolet which later fell on him; that he could see that it was safe by looking at it; that anybody else could have seen it clearly and anybody else could have seen that there wasn't any danger in it; that it was perfectly safe and anybody else looking at it would have seen just exactly what he saw with respect to its position.

A witness who worked at the wrecking yard testified that when the Chevrolet was purchased, he placed it against the Ford, leaning it against an open door, using a crane to move it; that cars were usually handled that way because they burned faster. When asked if he thought that was a particularly safe way to leave the car, he replied, "Well, that is a safe way if nobody came over and touched them."

The witnesses were supplied with miniature automobiles to use while testifying, to demonstrate the positions of the two cars involved, both before the accident and after the Chevrolet had fallen. The court

thoughtfully preserved a record of these demonstrations by dictating an account of them as performed by the witnesses.

There was direct disagreement as to the position the car which fell was in prior to the accident, plaintiff asserting that it was standing on its front and leaning away from the Ford and against another car, while defendant and his workmen contended that it was tipped on its side leaning against the door of the Ford.

■ The court, in making its Findings 10 to 14 above, no doubt concluded that plaintiff should have considered the position in which the two cars had been placed as one dangerous to anyone attempting to walk between them, whether he did so appraise the situation or not. The condition presented, which the court found to be hazardous, was open and visible, was one which could and should have been apparent to anyone. In acting as he did, plaintiff, as the court properly held, assumed the risk of the injury which occurred and was guilty of negligence which, in conjunction with the dangerous situation of the cars, accomplished the injury. There was substantial evidence to justify the quoted findings.

Appellant under this point also claims that the court erred in refusing certain of his requested findings of fact and conclusions of law. It is unnecessary to set these out as they merely urge the contrary to those found by the court and which we show above.

■ Finally, appellant states that there is considerable confusion among the authorities, and in New Mexico, as to whether the doctrine of "assumption of risk" should be extended to situations other than those involving master and servant. He is in error as to this, however, since in Reed v. Styron, 69 N.M. 262, 365 P.2d 912, we held that the applicability of the doctrine does not depend upon a master and servant or any type of contractual relation, but is applicable to any relation voluntarily assumed. Rutherford v. James, 33 N.M. 440, 270 P. 794, 63 A.L.R. 237, cited by appellant as confining the doctrine to cases arising out of the relationship of master and servant, was expressly overruled on this point by the later decision.

The judgment will be affirmed, and

IT IS SO ORDERED.

CARMODY and CHAVEZ, JJ., concur.